UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANK MUÑOZ,

Plaintiff,

CENTRO LATINO SER-JOBS FOR PROGRESS, et al.,

Defendant.

NO. C09-05644-RJB

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 10). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Centro Latino Ser-Jobs for Progress ("Centro Latino") is a Washington non-profit corporation. Dkt. 6, at 2. Centro Latino describes itself as "a social service agency whose general mission is to empower the Hispanic community through education, job skill development and family services." Dkt 10, at 1.

In December 2007, Centro Latino hired Plaintiff Frank Muñoz to work as a Family Support Worker. Dkt. 6, at 2. In September 2008, Mr. Muñoz began work for Centro Latino in a new position as Director of Family Services. Dkt. 6, at 3.

According to his deposition testimony, Mr. Muñoz claims that he experienced several instances of allegedly offensive behavior conducted by Centro Latino staff.  Mr. Muñoz claims that he was "constantly treated like a cabana boy" and he was "the Latino stud" that would "come in and make sure that everything was okay with all the women within the workplace." Dkt. 15-1, at 13.  Mr. Muñoz states that "either once a week or bi-weekly," Lisa Carrillo, Centro Latino Director of Finance, and Kate Smith, Centro Latino Director of Programs, made comments that Mr. Muñoz's hair was "sexy" and that Mr. Muñoz dressed "nice."  Dkt. 15-1, at 14.  Mr. Muñoz explains that having long hair was an expression of his Latino/Mexican heritage and that subsequent comments from Centro Latino staff that his hair was too long were an affront to his ethnicity.  Dkt. 15-1, at 35.  Mr. Muñoz also describes one incident in which he claims that Ms. Smith stated that "well, maybe…I [Ms. Smith] would want you [Mr. Muñoz] to hold my hand for me."  Dkt. 15-1, at 39.

Mr. Muñoz further states that Ms. Carrillo and Ms. Smith commented about how the Latino clients of Centro Latino "would not make it to their appointments."  Dkt. 15-1, at 15.  Also, Mr. Muñoz claims that Ms. Carrillo informed Mr. Muñoz that "she no longer appreciated my speaking Spanish" and that "none of the Latino males in the supervisory roles" at Centro Latino "ever lasted."  Dkt. 15-1, at 17.  Mr. Muñoz states that he was also offended because David Artis, one of the members of the Centro Latino Executive Committee, was unfamiliar with the history of Cinco de Mayo.  Dkt. 15-1, at 34.

In addition to the allegedly offensive conduct on behalf of Centro Latino staff, Mr. Muñoz states that he discovered "several accounting inconsistencies with our contracts with the state funders."  Dkt. 15-1, at 10.  Mr. Muñoz describes how he would be asked to authorize "numerous orders that Lisa Carrillo would have me sign on regarding probably supplies, maintenance, things that would happen in the organization."  Dkt. 15-1, at 24.  Mr. Muñoz

states that, through these purchase orders, members of the Centro Latino staff and Executive Committee were inappropriately directing money to friends and family members. Dkt. 15-1, at 28-29.

In his deposition, Mr. Muñoz claims that on October 20, 2008, the Centro Latino Executive Committee met with the Centro Latino Executive Director for a performance evaluation. Dkt. 15-1, at 9. In that meeting, according to Mr. Muñoz, the Executive Committee "suggested that an inappropriate relationship had occurred between the [Executive Director] and [Mr. Muñoz] resulting in [Mr. Muñoz's] promotion to the director of family services." *Id.* Mr. Muñoz states that the Executive Director responded to the Executive Committee on October 21, 2008, with "documentation showing that there was no inappropriate relationship." *Id.* Mr. Muñoz continues, stating that on October 24, 2008, the Executive Committee terminated the employment of the Executive Director and "met with the staff off site." *Id.* When he asked why he was not informed about the off-site meeting, Mr. Muñoz states that he was told that he was not invited to the meeting. *Id.*

On October 27, 2008, at 8:53 a.m., Mr. Muñoz sent an email to David Artis, Patricia Chase, and other members of the Centro Latino Executive Committee "requesting a meeting with the Board to address all issues and concerns, the hostile work environment, rumors, and their intentional isolation of myself from meetings…" Dkt. 12, at 5. In his email, Mr. Muñoz references the off-site meeting of October 24, 2008, and how Ms. Carrillo and the rest of the staff (minus Mr. Muñoz) met with the board on that day. *Id*.

On October 27, 2008, at 1:56 p.m., Mr. Muñoz sent a second email to the recipients of his first email. Dkt. 12, at 7. In this email, Mr. Muñoz stated that he understood that Centro Latino had "brought in legal counsel" to attend his requested meeting and that he "must insist that the meeting be rescheduled until my attorney may be present." *Id*.

On October 27, 2008, at 2:43 p.m., Mr. Muñoz sent a third email to same recipients, stating that Patricia Chase "has threatened me with termination if I do not waive my right to have counsel present at a meeting with Centro Latino's attorney and Executive Board." Dkt. 12, at 9. Mr. Muñoz reiterated his demand to have his own counsel present for the meeting. *Id.* Mr. Muñoz states in his deposition that he eventually attended the meeting "under duress." Dkt. 15-1, at 10.

On the afternoon of October 27, 2008, Centro Latino terminated the employment of Mr. Muñoz. Dkt. 6, at 4; Dkt. 11, at 21. Centro Latino Executive Committee member Patricia Chase states in a declaration that Mr. Muñoz was terminated "on the basis of what we deemed to be unsatisfactory behavior and performance of a probationary employee." Dkt. 12, at 2-3.

After his termination, in January 2009, Mr. Muñoz filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC). Dkt. 11, at 4. In his EEOC complaint, Mr. Muñoz alleged that Centro Latino engaged in unlawful employment practices contrary to Title VII of the Civil Rights Act of 1964 by "terminating my employment and all Latino employees in leadership positions, as a class, on the basis of national origin, Mexican, and in retaliation for opposing discrimination in the workplace, and for [sic] addressing the hostile work environment this discrimination centered on." Dkt. 11, at 5. On July 16, 2009, the EEOC issued a right to sue letter. Dkt. 11, at 7.

On October 13, 2009, Mr. Muñoz filed this case against Centro Latino in federal court. Dkt. 1. In his complaint, Mr. Muñoz asserts four claims, alleging that Centro Latino is liable for "race discrimination, harassment, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended." *Id.* On December 4, 2009, Centro Latino filed an answer to Mr. Muñoz's complaint. Dkt. 6.

On September 9, 2010, Centro Latino filed a Motion for Summary Judgment. Dkt. 10. In its motion, Centro Latino requests that all claims against it brought by Mr. Muñoz be dismissed because Mr. Muñoz cannot show that there are genuine issues of material fact supporting his claims. *Id.* On September 27, 2010, Mr. Muñoz filed a brief in opposition to Centro Latino's motion for summary judgment. Dkt. 14. In his motion, Mr. Muñoz argues that the Court should deny Centro Latino's motion because there exist numerous issues of material fact surrounding each of Mr. Muñoz's claims. *Id.* On October 1, 2010, Centro Latino filed a reply.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

The Ninth Circuit has provided additional guidance when an employer brings a motion for summary judgment in an employment discrimination case. Such motions must be carefully examined in order to zealously guard an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). This high standard means that an employee need only produce "very little evidence" to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a "searching inquiry" – one that is most appropriately conducted by the factfinder, upon a full record. *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (internal quotations omitted).

## III. DISCUSSION

A. Racial/gender discrimination claim

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs

to a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vasquez v. County of Los Angeles*, 349 F.3d 634, n. 5 (9th Cir. 2003). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. *Id*. at 804.

In its motion for summary judgment, Centro Latino argues that Mr. Muñoz's racial discrimination claim fails for want of evidence. Dkt. 10, at 17. While Centro Latino concedes that Mr. Muñoz "is of Mexican ancestry," (*Id.*) it argues that Mr. Muñoz is unable to establish the other three elements of a *prima facie* racial discrimination claim. For example, Centro Latino argues that Mr. Muñoz cannot prove that he was qualified for his position as Director of Family Services because he lacked a bachelor's degree. *Id*; *see also* Dkt. 12, at 3. Furthermore, Centro Latino argues that Mr. Muñoz faced no adverse employment action as a result of racial discrimination. Dkt. 10, at 17-18. Finally, Centro Latino argues that Mr. Muñoz cannot establish that "similarly situated non-Latino employees received more favorable treatment." Dkt. 10, at 18. Centro Latino supports this argument by noting that Mr. Muñoz made no such statement in a response to an interrogatory requesting "all facts…upon which your allegation of Racial Discrimination is based and which you contend supports the allegation." Dkt. 11, at 10.

Mr. Muñoz argues that he is able to establish a *prima facie* case of either racial discrimination or gender discrimination. Although Mr. Muñoz did not plead a specific claim

for gender discrimination in his complaint, he did allege facts that may support a gender discrimination claim.  Mr. Muñoz first argues that he is a "Latino male of Mexican origin." Mr. Muñoz next argues that deposition testimony by Centro Latino director David Artis establishes that Centro Latino did not terminate Mr. Muñoz on account of Mr. Muñoz's job performance:

> Q: Are you still on the board at Centro?
>
> [Mr. Artis]: Yes, I am.
>
> Q: During the board's discussion of Mr. Muñoz…was there any discussion about his job performance at all?
>
> [Mr. Artis] No. It's the executive director's position to evaluate that, not us.

Dkt. 15-1, at 59.  Finally, Mr. Muñoz claims that Kate Smith, a similarly-qualified Caucasian woman, took over the duties that Mr. Muñoz had before his termination.  Dkt. 11, at 24.

Mr. Muñoz is able to establish a *prima facie* case of racial and gender discrimination. First, as a Latino male, it is uncontroverted that Mr. Muñoz is a member of a protected class. Second, it appears that Centro Latino determined that, despite his lack of a higher education degree, Mr. Muñoz was sufficiently qualified for the position as Directory of Family Services when he was placed in that position in September 2008.  Furthermore, Centro Latino has produced no negative performance reviews or other evidence to suggest that Mr. Muñoz was performing his job before October 27, 2008 in a manner that was contrary to Centro Latino's legitimate expectations.  Conversely, Centro Latino board member David Artis stated that the board of directors did not consider the prior job performance of Mr. Muñoz during the board's discussion of Mr. Muñoz on October 27, 2008. Dkt. 15-1, at 59.

Third, Mr. Muñoz suffered an adverse employment action upon his termination from Centro Latino.  Finally, at least some evidence exists to show that Centro Latino appointed

Kate Smith, a Caucasian woman, to take over the duties previously performed by Mr. Muñoz. *See* Dkt. 11, at 24.

Because Mr. Muñoz can establish a *prima facie* case of discrimination, the burden shifts to Centro Latino to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Vasquez*, 349 F.3d at 640. Centro Latino has met this burden of production by including a declaration by Centro Latino board member Patricia Chase stating that the employment of Mr. Muñoz was terminated "on the basis of what we deemed unsatisfactory behavior and performance of a probationary employee." Dkt. 12, at 2-3. Ms. Chase states that this decision was reached by both herself and fellow Centro Latino director David Artis. *Id.*

At this stage, Mr. Muñoz's burden is to produce evidence demonstrating that his termination was motivated in whole or in part by discriminatory intent. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). Mr. Muñoz may meet this burden by demonstrating that the proffered explanation is inconsistent or otherwise unbelievable. *Id*. Mr. Muñoz may offer direct or circumstantial evidence of discriminatory animus. *Id* at 1038. Direct evidence is evidence that proves discriminatory animus without the need for inference or presumption. *Id.* Such evidence typically consists of overtly discriminatory comments or actions by the employer and creates a triable issue for the finder of fact, even if the evidence is insubstantial. *Id.* Circumstantial evidence, which relies upon inferences and presumption, must be both specific and substantial in order to withstand summary judgment. *See id*.

Mr. Muñoz is able to present at least some evidence to overcome Centro Latino's proffered non-discriminatory reason. First, the evidence shows that the explanation proffered by Centro Latino board member Patricia Chase is inconsistent when compared to other evidence. In her declaration, Ms. Chase states that because of a "sudden behavioral shift" on

behalf of Mr. Muñoz, Centro Latino Executive Committee members available on October 27, 2008, "took an active interest" in meeting with Mr. Muñoz "to discuss and investigate [Mr. Muñoz's] conduct and fitness for his position." Dkt. 12, at 2.  After receiving a third email from Mr. Muñoz discussing his request to meet with the Executive Committee, "the decision was made by Executive Committee member David Artis, who was at that time the Board chair, and myself [Patricia Chase] to terminate [Mr. Muñoz's] employment on the basis of what we deemed to be unsatisfactory behavior and performance of a probationary employee." Dkt. 12, at 2-3.  Presumably, this "unsatisfactory behavior and performance" stemmed from the emails sent by Mr. Munoz on October 27, 2008.

However, the deposition testimony of Executive Committee member David Artis includes statements that are inconsistent with the declaration of Ms. Chase.  In his deposition, Mr. Artis stated that the Executive Committee was not in a position to evaluate the job performance of Mr. Muñoz, with that responsibility falling on the executive director of the Centro Latino. Dkt. 15-1, at 59.  This statement contradicts the position of Ms. Chase, who declared that both she and Mr. Artis decided that the performance and behavior of Mr. Muñoz was unsatisfactory. Dkt. 12, at 2-3.

Second, Mr. Muñoz can defeat Centro Latino's proffered non-discriminatory reason by offering specific and substantial circumstantial evidence to show that the people he claims exhibited discriminatory animus influenced or participated in the decision-making process to end his employment with Centro Latino. *See Dominguez-Curry*, 424 F.3d at 1039-1040.

During his depositions, Mr. Muñoz claims that both Ms. Smith (Centro Latino Director of Programs) and Ms. Carillo (Centro Latino Director of Finance) made comments that Mr. Muñoz perceived as racially derogatory.  For example, Mr. Muñoz claims that both Ms. Smith and Ms. Carillo made comments regarding the timeliness of their Latino clients:

Q: And you mentioned in this deposition that you also believe there to be racial discrimination or racial hostile environment as well. What kind of comments or behavior do you believe made up the racial hostility that you experienced?

[Mr. Muñoz]: You know, a lot of the times they would actually say that Latinos would not make it to their appointments.

Q: Who would say this?

[Mr. Muñoz]: The director of finance, the director of – well, the program director, Kate Smith, and Lisa Carrillo. It would trigger down to some of the employees feeling threatened if they didn't go along with this and they would actually say it themselves as well.

Q: What kind of comments?

[Mr. Muñoz]: The comments were that Latinos would not show up to their appointments, if you give them the opportunity to do a walk-in they will have an overflow because they only wanted to show up – the Latinos only wanted to show up when there was something – when the problem had already exploded and it was already way – they couldn't do anything about it, it only mattered to the Latino community or to that person to show up after the fact.

So it was just a stigma of Latinos don't care. Lisa Carrillo always constantly said that – informed me that I shouldn't have to – you know, Latinos don't show up on time, and she tried to discredit that I actually would show up at 5:00 in the morning, 6:00 in the morning by telling me that, you know, Centro Latino doesn't open till eight o'clock, you don't have to be here this early…

Dkt. 15-1, at 16.

In addition to these comments, there is at least some evidence that: (1) both Ms. Smith and Ms. Carrillo served for some period as the interim executive director for Centro Latino (Dkt. 15-1, at 8; Dkt. 11, at 37); (2) the executive director was tasked with evaluating the

performance of employees of Centro Latino (Dkt. 15-1, at 59); and (3) Ms. Carrillo was the only member of Centro Latino management invited to meetings of the Executive Committee (Dkt. 15-1, at 31). Based on this evidence, it is conceivable that a reasonable factfinder could conclude that the alleged animus exhibited by Ms. Smith and Ms. Carrillo affected the employment decision to terminate Mr. Muñoz. *See Dominguez-Curry*, 424 F.3d at 1039-1040.

The evidence supporting Mr. Muñoz's discrimination claim is extremely thin. However, viewing all the evidence in a light most favorable to Mr. Muñoz and resolving all inferences in Mr. Muñoz's favor, as the Court must (*Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985)), the Court concludes that Mr. Muñoz has raised a genuine issue of material fact as to Centro Latino's motive for terminating his employment.

B. Retaliation Claim

42 U.S.C. § 2000e-3 makes it unlawful to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp., 113 F.3d 1079* (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id*.

The anti-retaliation provision of Title VII seeks to prevent an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement

of Title VII's basic guarantee of a workplace free of racial, ethnic, religious, or gender-based discrimination. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63 (2005). While the substantive provision of Title VII seeks to prevent injury to individuals based on who they are, i.e., their status, the anti-retaliation provision seeks to prevent harm to employees based on what they do, i.e., their conduct. *Id*.

Centro Latino argues that Mr. Muñoz is unable to establish a *prima facie* claim of retaliation. Dkt. 10, at 19-20. Centro Latino contends that Mr. Muñoz engaged in no protected activity sufficient to satisfy the first element of a retaliation claim. *Id*

In his response, Mr. Muñoz argues that he engaged in a protected activity "when he requested a meeting to discuss the hostile work environment that he had been enduring." Dkt. 14, at 20. Mr. Muñoz contends that this "hostile work environment" identified in his October 27, 2008 email was due to "his race/national origin and his gender." *Id.* Mr. Muñoz further argues that Mr. Muñoz's termination satisfies the adverse employment action element and that the mere hours between the delivery of his email and his termination satisfies the causation element. Dkt. 14, at 20-21.

Mr. Muñoz establishes a *prima facie* case of retaliation. Mr. Muñoz satisfies the first element of a retaliation claim because he engaged in a protected activity on October 27, 2008 when he requested a meeting with the Executive Committee "to address all issues and concerns, the hostile work environment, rumors, and their intentional isolation of myself from meetings…" Dkt. 15-1, at 51.

First, Mr. Muñoz's reference to a "hostile work environment" in his October 27, 2008 email could be interpreted by a reasonable fact finder as reference to the environment created by the allegedly derogatory comments of Ms. Smith and Ms. Carrillo, two members of the Centro Latino management who allegedly had evaluative responsibilities and access to the

Executive Committee. *See E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013-1014 (9th Cir. 1983) (stating that an employee's objections to the conduct of an employer's agent tasked with "employment matters" qualified as a "statutorily protected expression.").

Second, to establish the first element of a *prima facie* case of retaliation, Mr. Muñoz need only show that he had a "reasonable belief" that the employment practice he protested was prohibited under Title VII. *Trent v. Valley Elec. Ass'n Inc*., 41 F.3d 524, 526 (9th Cir. 1994). The evidence presented shows that Mr. Muñoz could have had a reasonable belief that the issues he raised to the board in his October 27, 2008 email qualified as a hostile work environment related to ethnicity and gender issues. In addition to the remarks of Ms. Smith and Ms. Carrillo regarding the tendency of Latino clients to keep or make appointments, Mr. Muñoz claims that both Ms. Smith and Ms. Carrillo made comments "either once a week or bi-weekly" about Mr. Muñoz's long hair that he claims made him feel "uncomfortable" and that he apparently interpreted as an affront to his ethnic heritage. Dkt. 15-1, at 14.

Third, the remaining two elements of a *prima facie* claim are met. The termination of Mr. Muñoz's employment qualifies as an adverse employment action while the timeliness of Mr. Muñoz's email and his subsequent termination could establish causation. *See e.g. Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc*., 797 F.2d 727, 731-32 (9th Cir.1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).

Finally, as discussed above, although Centro Latino can proffer a non-discriminatory reason for the termination, Mr. Muñoz can raise genuine issues of material fact showing that the reason advanced was a pretext.

Much like his discrimination claim, the evidence to support Mr. Muñoz's claim of retaliation is very weak. However, given the standard used to evaluate defendants' motions for summary judgment in Title VII cases, Mr. Muñoz's retaliation claim should proceed.

C. Harassment / hostile work environment claim

Although Mr. Muñoz alleges "harassment" in his complaint, he has provided no evidence of "quid pro quo" harassment in his pleadings. What remains, then, is a claim for hostile work environment. *See Harris v. Forklift Sys.*, 510 U.S. 17, 20 (1993).

Courts have interpreted Title VII to bar not only discrimination as it is traditionally understood, but also hostile work environment harassment. To prevail on a Title VII hostile workplace claim premised on either race or sex, a plaintiff must show (1) that he was subjected to verbal or physical conduct of a racial [or sexual] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Not all workplace disputes fall within the purview of Title VII. The severe and pervasive prong ensures that only truly harassing behavior is deemed unlawful. To determine whether conduct is severe and pervasive, the Court looks at the context of the alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. *Id.* The working atmosphere must be both subjectively and objectively abusive. *Id*. Merely an offensive utterance is insufficient. *Id*.

Centro Latino argues that even if the allegations of Mr. Muñoz are taken as true, they are insufficient as a matter of law to support a claim of hostile work environment. Dkt. 10, 20-23. Specifically, Centro Latino argues that allegedly flirtatious or racially insensitive

comments made by members of the Centro Latino staff about Mr. Muñoz's hair are neither severe nor pervasive enough to defeat a motion for summary judgment. *Id.* Furthermore, Centro Latino contends that both (1) the alleged lack of knowledge of members of Executive Committee members concerning Mexican history and (2) the alleged rumor of an "inappropriate relationship" facilitated by Centro Latino staff and Executive Committee members are not sufficiently severe and pervasive to support a hostile work environment claim. *Id.*

Mr. Muñoz counters by pointing to several instances of allegedly offensive conduct: (1) comments by Ms. Smith and Ms. Carrillo regarding Mr. Muñoz's hair and how he looked "sexy"; (2) how those same comments about his hair offended his race and national origin; (3) the aforementioned comments by Ms. Smith and Ms. Carrillo regarding appointments and Latinos; (4) comments by Ms. Smith and Ms. Carrillo to Mr. Muñoz to not speak Spanish while working at Centro Latino; and (5) the perpetuation of a rumor regarding a personal relationship with a female executive director "that never would have taken flight were it not for [Mr. Muñoz's] gender." Dkt. 14, at 23.

Even if Mr. Muñoz could satisfy the first element of a hostile work environment claim, there is not sufficient evidence that the conduct was unwelcome to Mr. Muñoz or that the conduct was sufficiently severe and pervasive as to alter the conditions of Mr. Muñoz's employment.

First, there is not sufficient evidence to show that the allegedly offensive comments were unwelcome to Mr. Muñoz at the time the comments were made. A determination of whether Mr. Muñoz indicated that the comments were unwelcome is made through an examination of his conduct. *Nichols v. Azteca Restaurant Enterprises, Inc*., 256 F.3d 864, 873

(9th Cir. 2001). Here, the only evidence that Mr. Muñoz informed Ms. Smith or Ms. Carrillo of his objections to their comments is contained in the deposition testimony of Mr. Muñoz:

> Q: Did you tell Lisa Carrillo and/or Kate Smith – and please clarify if it was one and not the other. Did you tell either of them about these issues, one, that this was something that had – there was a heritage factor to it as well as –
>
> [Mr. Muñoz]: Oh, they knew. They knew. There was no reason to, you go specifically into that. And I know that at one time or another it was mentioned. There was several comments always made throughout staff meetings. So they knew firsthand what the significance of having long hair meant to me.
>
> Q: Do you recall – and did you tell them?
>
> [Mr. Muñoz]: I recall saying it. I recall saying it in their presence. If I said it directly to them or not if I said it directly to the rest of the staff or whatnot, it was definitely something that they knew firsthand that came out of my mouth.

Dkt. 15-1, at 36-37.

When asked a direct question – twice – about whether he informed Ms. Smith and Ms. Carrillo about his objections to their comments, the best that Mr. Muñoz can offer is that he recalled "saying it in their presence" and that "one time or another it was mentioned." *Id.* The remainder of his answer to these direct questions is mere speculation that Ms. Smith and Ms. Carrillo "knew" that the comments were offensive to Mr. Muñoz. *Id.*

Mr. Muñoz's conduct indicating that he felt the comments unwelcome contrasts with conduct of the employees in both *Nichols* and *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047 (9th Cir. 2007). In *Nichols*, the Ninth Circuit disagreed with the District Court's conclusion that the employee did not indicate that the sexual comments made by co-workers were unwelcome. *Nichols*, 256 F.3d at 873-874. The Ninth Circuit noted that the employee in *Nichols* reported his objections to the comments in detail to a human resource manager and complained to an assistant

and general manager, though in less detail. *Id.* In *Craig*, the Ninth Circuit stated that the unwelcome element of a hostile work environment claim was met when the employee repeatedly rebuffed the sexual advances of a supervisor and eventually reported his conduct to the company. *Craig*, 496 F.3d at 1055. Here, the only evidence that Mr. Muñoz objected to the comments by Ms. Smith and Ms. Carrillo is his speculation that they "knew" about his objections and that he may have mentioned his displeasure in their presence. Absent is any indication that Mr. Muñoz indicated any objections to the Executive Committee of Centro Latino or any other member of management.

In addition to not meeting the unwelcome element, Mr. Muñoz is unable to show that the conduct was sufficiently severe or pervasive to alter the conditions of Mr. Muñoz's employment. The conduct in question here is not severe. There is no evidence that the comments by Ms. Smith and Ms. Carrillo escalated to any unwelcome physical contact or touching. Furthermore, the comments here, while arguably unprofessional, are less severe than in cases where the Ninth Circuit held conduct to be insufficiently severe. *See Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000) (no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor); *Vasquez*, 349 F.3d at 644 (no hostile work environment when co-worker stated that plaintiff had "a typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics do good in the field."); *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir.1990) (no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to

Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino).

Additionally, there is not sufficient evidence to show that the comments were pervasive. The only evidence of periodicity that Mr. Muñoz is able to attach to any of the allegedly offensive comments is contained in his deposition testimony:

> Q:  And how often would Kate Smith and/or Lisa Carrillo make these comments, these gender-related comments about you being sexy or looking nice?
>
> [Mr. Muñoz]: I would have to say it was either once a week or bi-weekly that he had to meet at the main office for meetings, for staff meetings.

Dkt. 15-1, at 14.

Mr. Muñoz has presented no timeline associated with any of the other allegedly offensive comments.  Even if "the required level of severity or seriousness varies inversely with pervasiveness or frequency of the conduct" (*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008), the relatively non-severe nature of these comments combined with the lack of evidence as to the frequency of any of the other behavior shows that the Mr. Muñoz is unable to meet the third element of a hostile work environment claim.

Accordingly, Mr. Muñoz's harassment and hostile work environment claims should be dismissed.

Therefore, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 10) is **GRANTED IN PART AND DENIED IN PART.**  Plaintiff's harassment and hostile work environment claims are **DISMISSED WITH PREJUDICE** pursuant to Fed.R.Civ.P. 56.  Plaintiff's claims for discrimination on the basis of ethnicity and gender, and his claim for retaliation, may proceed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 12th day of October, 2010.

ROBERT J. BRYAN
United States District Judge